The next case is Harper v. Detective Leahy. Andrew Mancini May it please the court, my name is Andrew Mancini and I represent the plaintiff appellant June Harper. We're here because in the court below the district court ruled that basically police officers may enter a premise of the subject of a warrant merely without reasonable belief that the person lives there or that the person is present at the apartment at the time of the execution of the warrant. The court below found that the reasonable belief that would have satisfied Payton was satisfied by five, essentially five facts, one being that Detective Leahy searched multiple databases to find the subject's address and that the most recent address that he found was from a warrant that was issued from criminal court six months earlier that contained information, the address of which that information was at least a year old. We submit that was stale and that's an issue for the jury to decide. The court also found the second fact that, sorry, the third fact that the woman who answered the door, my client Ms. Harper, identified herself as the subject's mother. The fourth fact was that my client, sorry, the subject was apparently, quote, not home. That's what my client testified to below. And that when the officers and then that the officers heard a male voice, those are the facts that the district judge, Judge Kogan, found satisfied Payton, that that was sufficient for the officers to form a reasonable belief that the subject of the bench warrant was in the premises and lived there. That the mother who answered the door said he's not there and that he heard a male voice behind the door. Why wasn't that enough? The bench warrant was six months old, you said? Yes. Six months earlier, his address was listed at a particular address. I mean, I'm not even looking at all the evidence in the record, but then they knock on the door and a woman answers and says, yes, I'm his mother. I'm his mother. It doesn't mean that he lives there. He's a 23-year-old. He could have moved out. Don't our cases say that where you have a decent indication that somebody lived there and this six months before or a year before is certainly a decent indication, you have a statement, I'm his mother, and it's 7 a.m. in the morning and that our cases are very clear on, but when it's very early, you expect somebody to be there, then leave aside whether she said he's not home, leave aside the question of whether they heard a male voice. Isn't the rest plenty under our cases? That he . . . That he was there. Our cases have said early in the morning with indication that this was his address is enough. So what's different about this one? I don't believe so, Judge. I believe that Peyton requires more. A reasonable belief that he is present at that time is not found based on merely him being listed on a warrant, that address being listed on a warrant that's six months old, and that warrant, that address was a year old. So they can't take information, a police officer can't form a reasonable belief that somebody is present based merely on the fact that their address a year earlier was there. If you have the address of somebody from a year ago and no other evidence that he has moved as far as the police have, and this is early in the morning, isn't that enough to say it's pretty darn likely that somebody is there? At least, you know, I would say directly, but at least for qualified immunity. No, Judge, I believe there's more. There was absolutely no additional investigation. Many of the Second Circuit cases require that the police officers at least do some investigation, ask other tenants whether or not they've seen the individual. They didn't even ask his mother if he was there, or if he was home, if that was his home. Isn't it the common experience for people to look in their address books, if I want to know a friend's address, I look in my address book and I see an address that was written, hardly ever was written two days ago, it was usually written a year ago, four years ago, ten years ago, I look at it and I say, I know his address, that's where he lives. That's correct. Something that was written there six, eight, ten years ago, so it could be wrong, they could have moved. That's correct. And that would, you know, allow the officers to perhaps begin their investigation, but once they get there, does it rise to the level of forming a reasonable belief? I don't believe it does. I think they need to do more. We're not talking about proof beyond reasonable doubt that that's where he lives, we're talking about a reasonable belief. It's not reasonable to think that someone lives where you have documentary evidence that they lived a year ago, especially when it's supplemented by the information that this being a young person, it turns out when you knock on the door that it's his mother's apartment. It's still, it's now his mother's apartment. I believe, Judge, that the information, that being that old and him being that young, there's reason to believe that he could have been elsewhere. He could have. So, yes, does it provide them . . . Somebody can always be elsewhere. Somebody can be on vacation. Somebody can be, have moved, but the question isn't, is there evidence that he was there? Is there enough so that a policeman can reasonably believe that he would be there? That's correct. And when . . . If somebody tells me, this is somebody's address, and I go there at a time when people who live there are likely to be there if they're there, 7 a.m. in the morning, well, isn't that enough? Well, it depends on how old that information is, Judge. If someone told you 10 years ago that an individual lived at a certain location, you went there, and would you have a reasonable, would you then have a reasonable belief? Where is the line drawn? Under this rationale, you could base your information that he lived there on information of any vintage, 20 years earlier. It has to . . . It wasn't 20 years. I mean, it may be difficult to figure out where to draw the line, but it wasn't 20 years here. Sure. And it wasn't 6 months. If you're talking about an 85-year-old like me, and the information is 20 years from now, that is unlikely that I would still be there. But if you're talking about a kid like this, it looks very different. A young man, Judge, who may be in the prime of his . . . He did turn out to live there, though I understand that's not . . . That can't be considered, Your Honor, respectfully. I do think that, and I'll wait for rebuttal on this, that the other question reasonably believe that he's present is more pressing. Good morning, Your Honors. May it please the Court. My name is Elizabeth Friedman, and I am appearing for the defendants' appellees. Your Honor, in this case, certainly, the police investigated, adequately investigated, and formed a reasonable belief that, in fact, Keeter Harper, the subject of the bench warrant, was not only lived at the premises, but they also reasonably believed that he was present at those premises. I'll go directly to what plaintiff is disputing here. And basically, she disputes that she said in — that he — she told the officers, the Detective Leahy testified, or submitted an affidavit, that the plaintiff told him when she answered the door that Keeter Harper was not home. She later disputed that and tried to say, well, I really said he was not there. Whether or not she said he was not there, he was not home, she did acknowledge that she was his mother and that Keeter Harper was, in fact, her son. And in fact, she never disputed that this was his residence and that he lived there. So in fact, the Court need not even consider whether or not — the Court need not — need to reach that alleged disputed fact because, in fact, the police had other — ample other evidence to show, including the fact that plaintiff admitted that she was Keeter Harper's mother and that the bench warrant was, in fact, for her son. I also want to point out that plaintiff cannot later dispute something that she explicitly said at her deposition to raise an issue of fact. That was stated at her deposition. Those exact words, that he was not at home, was used at the deposition. The plaintiff also claims that the bench warrant was stale. I'd like to point out that there's nothing that states what amount of time would make a bench warrant stale. That bench warrant was issued six months before Detective Leahy started to investigate it. In addition, plaintiff does not come forward with anything to refute the fact that there was not only an I-card, an investigation card, that Detective Leahy looked at and also came up with that address, but two other confirmatory I-cards that also bore that address. In fact, in the numerous searches that Detective Leahy engaged in, numerous computer searches, there was not a single other residential address that came up for this particular subject, for Keeter Harper. So I would submit that in fact, there was in fact due diligence done here. In fact, not only in his affidavit, Detective Leahy outlined the due diligence and the numerous computer searches that he undertook, which the district court also acknowledged. But on page 218 of the record, there's a DD5 in which Detective Leahy lays out all of the information that he gathered and all of the computer searches that he did. That's at page 218 of the record. And he talks about, in there, he outlines all of the computer searches that he did. So he basically described those in his affidavit. And there's nothing the plaintiff does to refute that all of those computer searches were done. Three confirmatory I-cards, not just the initial one that Detective Leahy was assigned, but he came up with two additional I-cards that also bore this particular address for this person. The only address that came up in the searches was this one. There was an address from 940 Cainton Avenue from 2009, but that came up as part of an investigation. No indication that that was a residential address. In addition, plaintiff never denied that in fact, this was Keeter Harper's home. And in fact, plaintiff now is trying to dispute that Detective Leahy heard a male voice inside the apartment. That male, the detective did state in his affidavit that he heard a male voice inside the apartment. Again, the court need not even reach that argument because there are so many other indications here. In terms of the early morning hour, and in fact, the plaintiff doesn't dispute that the detective heard the male voice. There doesn't have to be, the officer's reasonable belief does not need to be correct. In United States versus Lovelace, the case, the court said the reasonable belief need not be correct. As long as the belief is reasonable, that the subject of the warrant resides in the premises and is in fact there, at that early hour, that's a reasonable belief. The detectives can go in and they have a right to enter the apartment to search. They do not have to take Keeter Harper's mother's word for it. That would allow any roommate, any romantic partner, to deny entry to police officers when they are seeking to search for the subject of an arrest warrant. So certainly, just as in people, it's actually United States versus Lovelace. The officers did not need to take her word for it. And they cannot bar, she cannot bar the officers from going in and searching the premises. The court properly granted the motion for summary judgment. And unless the court has any further questions, we'll rest on our brief. Thank you, your honor. Ms. Harper did not deny that that was his home because she was never asked if it was his home. More importantly, however, if this court allows this decision to be upheld, what that means is that the police can go to any relative's home where the subject lived in the past and enter. Despite what evidence to the contrary there may be that he is present. Any relative is not mother, and past is not six months or a year. I think you're exaggerating. There is no line, Judge, and I believe that that is the key here that requires a jury to find whether or not that warrant was stale. A mother saying home, a mother will always say that her home where she raised her child is the home. She's not going to, that is not an indication that he, that is currently his home and that he is present there. And that doesn't give a reasonable belief that he is present there, especially when she says that he's not. So I don't believe that the court can take an affirmative representation that he is not there as a representation that he is there despite the early hour morning. Thank you. Thank you both. We'll take the case under advisement. That's the last argued case on the calendar this morning, so I will ask the clerk to adjourn court.